**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


JIMMY RAY O'KELLEY,

        Petitioner,

vs.                                                                 No. CIV-10-702 JCH/ACT

MIKE HEREDIA, Warden,
and GARY K. KING,
Attorney General for the
State of New Mexico,

        Respondents.


**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION** [1]

    1.  This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, filed November 10, 2009. [Doc. 1.] This matter was referred to the undersigned United

States Magistrate Judge by the Honorable Judith C. Herrera, United States District Judge, on

August 3, 2010, to submit proposed findings of fact and recommendation for the disposition of

this case pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) [Doc. 5].

---

[1]Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

2.  Petitioner Jimmy Ray O'Kelley ("O'Kelley")[2] is currently confined in Southern New Mexico Correctional Facility in Las Cruces, New Mexico. [Doc. 1.]  O'Kelley, proceeding *pro se*, challenges the judgment and sentence of the Third Judicial District Court in State v. O'Kelley, No.D-307-CR02001000584 (Dona Ana County, New Mexico).  He raises eight grounds for relief, some of which include more than one claim.

3.  Ground One.  O'Kelley claims error because he was indicted for the aggravated assault of Hellaman Telles[3] ("Telles") but was tried for the aggravated assault of Jose Campos ("Campos").  He claims that his due process rights were violated because he was tried for the assault of someone different than he was charged with assaulting in the indictment.  He claims the jury should have been read the indictment so that it would have known he was charged with assaulting one individual (Telles, who was shooting into the crowd) and kidnapping another individual (Campos).  He further claims that his counsel was ineffective for failing to detect, prior to the trial, the discrepancy between who he was charged with assaulting as it appeared in the indictment and who he was charged with assaulting at the trial.  [Doc. 1 at pp. 5-6.]

4.  Ground Two.  O'Kelley alleges there was insufficient evidence for the kidnapping verdict because his restraint of the victim was "fleeting and incidental." [Doc. 1 at pp. 7-8.]

5.  Ground Three.  O'Kelley claims that he was denied the right to confront a witness when the trial court allowed, after considering a lengthy objection by O'Kelley's trial counsel, a Texas detective to testify as to what O'Kelley said to a patrolman in an El Paso hospital.

---

[2]  The spelling of O'Kelley also appears as "O'Kelly."  The Court is using the spelling used by O'Kelley in his Petition for Writ of Habeas Corpus. [Doc. 1.]

[3] The spelling of Mr. Hellaman Telles's name also appears as "Helloman," "Hellamon, Helleman" and/or "Tellez."  The Court is using the spelling of the Mr. Helleman Telles' name as it appears in the index of witnesses from the trial transcript.

O'Kelley states that, contrary to his wishes, his appellate counsel did not appeal this issue.  [Doc. 1 at pp. 8-9.]

6. <u>Ground Four</u>.  O'Kelley claims that the identification procedures were impermissible, suggestive and contrary to due process.  O'Kelley states that, contrary to his wishes, his appellate counsel did not appeal this issue.   [Doc. 1 at pp. 9-10.]

7. <u>Ground Five</u>.  O'Kelley claims that his counsel was ineffective for failing to investigate, failing to retain an expert witness or investigate an alternate suspect after a search of the car revealed bullets identical to those used in the shooting, and failing to call Natalie Mesa as a witness.  He also asserts there was a "cumulative effect" of his counsel's ineffectiveness which undermined the reliability of the trial. [Doc. 1 at pp. 12-13.]

8. <u>Ground Six</u>.  O'Kelley alleges a number of instances of prosecutorial misconduct.  He claims the prosecutor deliberately elicited testimony from him about prior convictions when O'Kelley testified at trial, including a conviction which occurred two years after the instant charges.  He also claims that the prosecutor initially misled the jury stating that the "spot" on the gun was blood, and not rust.  He further alleges that the prosecutor, in his closing argument, told the jury that O'Kelley was shot and that his blood was on everything.  He asserts that the prosecutor also stated that witness Telles was intimidated and afraid to identify O'Kelley when in reality Telles testified that the police repeatedly suggested to him to identify O'Kelley during pretrial identification.  Finally, O'Kelley asserts there was a "cumulative effect" of prosecutorial misconduct.  [Doc. 1 at pp. 15-16.]

9. <u>Ground Seven</u>. O'Kelley claims that his counsel was ineffective when a stipulation was entered into before the trial by the parties agreeing not to admit into evidence the handgun found under the front seat of O'Kelley's vehicle.  During the trial, two handguns were

introduced as evidence and counsel forgot about the stipulation and failed to object. O'Kelley states that, contrary to his wishes, his appellate counsel did not appeal this issue.  [Doc. 1 at pp. 16- 17.]

10.  <u>Ground Eight</u>.  O'Kelley objects to the denial and dismissal by the state district court of his petition for state writ of habeas corpus based on what he asserts was an unreasonable determination of the facts.  [Doc. 1 at pp. 18-19.]

11.  Respondents filed an Answer [Doc. 11] requesting that the Petition be denied and dismissed with prejudice on the grounds that O'Kelley had not alleged or established that the state court proceedings either (1) resulted in a decision which was contrary to, or involved an unreasonable application of, federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  [*Id.* at p. 11.]

12.  Respondents "submit" that O'Kelley exhausted all claims in the state court but do not expressly waive the exhaustion requirement. [Doc. 11 at p.10.]

13.  Respondents do not challenge the timeliness of O'Kelley's federal habeas petition, and the Court concludes it was filed within the required one year limitation period.

14.  After reviewing the file, the undersigned Magistrate Judge required that Respondent file the record proper and transcripts.  They were submitted on January 24, 2011.  The Court also considered whether there was a need for an evidentiary hearing under 28 U.S.C. § 2254(e), and whether additional briefing from the parties on any of the issues would be of assistance, but determined that neither was necessary. The Court has thoroughly reviewed and considered the pertinent law, the pleadings and exhibits, and the transcripts of the trial.

4

**Factual Background Relevant to O'Kelley's Writ of Habeas Corpus**[4]

15.    On the night of October 27, and into the morning hours of October 28, 2000,  Mr.

Brandon Lewis ("Lewis") had a party at an apartment complex in Las Cruces, New Mexico

which O'Kelley attended.  It was estimated that there were from 30 to 40, and up to more than

100, party goers in the apartment, on the stairs and in the parking lot in front of the apartment

complex.  O'Kelley, an African American male, described it as a keg party [Doc. 11-3 at p. 8,

42; Doc. 1-1 at p. 10; TT Vol. 3, testimony of O'Kelley at p. 55;  TT Vol. 2, testimony of Lewis

at p. 323.]

16.    Also in attendance at the party was Campos.  He and a cousin were visiting Telles,

whose apartment was in the same complex as the party.  They first went to Telles's place and

then the two joined the keg party upstairs.  [Doc. 1-1 at p. 10; TT Vol. 1, testimony of Campos at

pp. 143-145; TT Vol. 2, testimony of Telles at p. 353.]

17.    About an hour later, "some guy" knocked or rang the doorbell at Telles's apartment

and pushed Telles inside. Telles did not know this man but described him as being a black man.

They struggled and Telles pushed the man out and then another black man came in and hit him

on the head with a bottle.  [TT Vol. 2, testimony of Telles at pp. 353-54.] Telles testified that his

girlfriend was screaming, and he went to get his guns. When he got outside, he saw people

gathering in a big bunch and he saw his friend Campos standing with a gun being held to his

head.  People were beating him up and hitting him in the head with bottles "and stuff."  Telles

---

[4]   The Court summarizes the factual background from portions of O'Kelley's and the
State's underlying appellate pleadings, O'Kelley's Petition for Writ of Habeas Corpus to the
state district court (all of which cite to the trial transcript), as well as from the trial transcript
itself.  The trial transcript record citations are referred to as TT Vol. __, testimony of _____ at p.
___.

testified that he "pleaded" with the man who had the gun pointed at Campos to let him go and put his gun down for a second.  The man with the gun dared Telles to pull out his guns. [*Id.* at pp. 355-57.] Other people were yelling for the beating to stop and to "leave him alone." [TT Vol. 2, testimony of Lewis at pp. 332-34.] Lewis, the party's host, described the guy with the gun as "brandishing it" to discourage others from interfering in the beating and also believes he was showing the gun to his downstairs neighbor, Telles. [*Id.* at pp. 333-34; Doc. 11-3 at pp. 9-10, 44; Doc. 1-1 at pp. 11.]

18.  Telles testified that he could tell that they were not going to stop hitting Campos, so he picked up his guns, opened fire and shot at the man who was holding the gun over Campos. [TT Vol. 2, testimony of Telles  at pp. 356-358.] After he ran out of bullets, Telles went back in his house to reload, called 911, turned out the lights, and waited. [*Id.* at pp. 359-60.]

19.  After the shooting was over, it was determined that Telles's gunfire killed Gerald Petes and wounded three others: O'Kelley, Jimmy Cross and the party's host, Lewis. [ Doc. 1-1 at p. 10.]

20.  Telles testified at O'Kelley's trial for the state as a hostile witness.  He stated that he did not know O'Kelley and could not identify him as the person pointing a gun at him or at Campos.   However, on the night of the incident he told the investigating officers that he knew O'Kelley "from back in the day because of my baby's mom." [TT Vol.2, testimony of Telles at pp. 361-62.]   Shortly after the shooting, Telles described the man holding the gun as tall, bald and with a moustache or goatee and wearing a white muscle shirt. [*Id.* at p. 373.] When interviewed by the police on video tape on two occasions after the shooting, Telles repeatedly referred to O'Kelley as the person who shot at him.  [TT Vol.2, testimony of Telles at p. 362.] On cross examination, Telles testified that the investigating officers continued to suggest to

Tellez that O'Kelley was the man with the gun. He also testified that he never picked O'Kelley out of a line-up. [TT Vol.2, testimony of Telles at pp. 367-69.] Other witnesses testified that O'Kelley, or a man who fit his description, was the man who had the weapon pointed at Campos on the night of the party. [TT Vol.2 , testimony of Lewis at pp. 336-348; TT Vol. 1, testimony of Eric Cardona at pp. 197-198, 204; TT Vol. 1, testimony of Sara Lucero at pp. 212-213, 215.]

21. O'Kelley's attendance at the party and involvement in the incident was brought to light when he sought medical treatment for a gunshot wound to his right buttock in El Paso. He testified that he went to an El Paso hospital instead of the Las Cruces hospital because he was on probation and did not want it known he attended a party. He was worried he might be sent back to jail if his probation officer found out about his attendance at the party. [TT Vol.3 , testimony of O'Kelley at pp. 64-65, 68, 71.] He told employees at the El Paso hospital that his name was Jonathan Sellers and that he had been shot at a convenience store. [*Id.*] O'Kelley stated that it is standard procedure for the hospital to contact police whenever there is a gunshot victim and that the El Paso hospital did so. [*Id.* at p. 68.]

22. O'Kelley's story that he was shot at a convenience store while in the El Paso area was suspicious. [TT Vol. 2, testimony of Arturo Ruiz at pp. 308-311.] A Las Cruces officer was sent to El Paso to investigate. Finally, O'Kelley stated to a police officer "Well, you know what? I'm not going to be able to hide this any longer" and he told them he had been shot at the party in Las Cruces. [TT Vol.3, testimony of O'Kelley at p. 69.] Pictures taken that evening show O'Kelley as a bald African American male, sporting a mustache. Photographs of his clothing reveal a pair of pants with a bullet hole in the right side, a pair of boxers, and a white tank top known as a "wife beater" or muscle shirt. [TT Vol.2, testimony of Officer Palomino at pp. 420-422.]

7

23.  O'Kelley was indicted in July 2001 on five charges: felony murder of Gerald Petes, first degree kidnapping of Jose Campos (firearm enhanced); aggravated assault of Hellaman Telles with a deadly weapon (firearm enhanced); shooting at a dwelling (no great bodily harm); and felon in possession of a firearm.  O'Kelley was arrested on October 30, 2001.  In April 2002, O'Kelley was indicted on an alternative theory of first degree murder, first degree depraved mind murder, and the cause was joined with the 2001 indictment.  Pursuant to a defense pretrial motion, the trial court dismissed the first degree depraved mind murder charge, but held that the pretrial stipulated facts were legally adequate to support a first degree felony murder charge. Both parties appealed, and ultimately all murder charges were dropped. [Doc. 1-1 at 11-12.]

24.  In August 2005, O'Kelley was tried, and convicted by a jury on the charges of first degree kidnapping of Jose Campos and aggravated assault of Jose Campos.

### Procedural Background

25.  On September 13, 2005, the state court entered a Judgment, Order and Commitment to the Corrections Department pursuant to a jury verdict finding O'Kelley guilty of the offenses of kidnapping (in the first degree), a first degree felony, and aggravated assault (deadly weapon), a fourth degree felony.  [Doc. 11-1 at Ex. A.]

26.  On October 3, 2005, O'Kelley, represented by counsel, filed a Motion to Reconsider Sentence.  [Doc. 11-1 at Ex. H.]

27.  On October 19, 2005,  the state court entered an Amended Judgment, Order and Commitment to the Corrections Department enhancing O'Kelley's sentences in accordance with

§ 31-18-17 NMSA 1978 based on O'Kelley's admission that he is a habitual criminal offender with two prior felony convictions for possession of cocaine. [Doc.11-1 at Ex. B and Ex. E.] Specifically, O'Kelley had been convicted on March 10, 1999, of Possession of  Controlled Substance, Cocaine, and convicted on July 10, 2000, of Possession of a Controlled Substance, Cocaine. [*Id.*]

28.  On October 28, 2005, the state court denied O'Kelley's Motion to Reconsider Sentence on the grounds that pursuant to New Mexico case law, a defendant is not entitled to pre-sentence confinement credit when incarcerated and serving a sentence on unrelated charges. The state court found that the sentence imposed was lawful and appropriate.[Doc. 11-1 at Ex. I.]

29.  On November 15, 2005, O'Kelley, represented by counsel, filed a Notice of Appeal. [Doc. 11-1 at Ex. G.]

30.  On December 14, 2005, O'Kelley, represented by counsel, filed his Docketing Statement with the New Mexico Court of Appeals.  The statement of the issues was as follows. [Doc. 11-1 at Ex. J.]

A.     (1)  "Due Process was violated when the trial court permitted Mr. O'Kelly [sic] to be convicted of an uncharged crime, aggravated assault of Mr. Jose Campos with a deadly weapon, when the grand jury had indicted him on the charge of aggravated assault of Mr. Hellamon Telles with a deadly weapon." [*Id.*  at p. 7.]

(2) "In the alternative, if the impropriety were considered to have been waived by counsel's lack of objection, then defense counsel ineffectively represented O'Kelley by allowing his client to be convicted of a crime with which he was not charged." [*Id.*]

B.     "O'Kelley received an illegal sentence when the court failed to fully credit the sentence imposed for the entire period of his post-arrest detention that resulted

from this shooting incident and extended to the date that he was sentenced." [*Id.* at 8.]

C.   "The state failed to present sufficient evidence to prove beyond a reasonable doubt each of the essential elements of first degree Kidnaping necessary to support conviction of that offense, where the forceful restraint and injurious contact was unitary, occurring simultaneously and lacked sufficient indicia of distinctness." [*Id.*]

D.   "Conviction of both Aggravated Assault (deadly weapon) and first degree Kidnapping constitutes a double jeopardy violation under both federal and state constitutions." [*Id.* at 9.]

E.   "The prosecution's dilatory tactic of deliberate overcharging Mr. O'Kelly [sic], causing the extensive delay between his post-arrest detention and his conviction of the remaining charges, amounted to prosecutorial misconduct that was prejudicial to Mr. O'Kelly [sic] by minimizing the potential benefit from concurrent sentencing." [*Id.* at p. 9.]

31.   On February 1, 2006, the Court of Appeals filed a Notice of Proposed Summary Disposition proposing to affirm O'Kelley's conviction for kidnapping and aggravated assault. [Doc. 11-1 at Ex. K.]

32.   O'Kelley, represented by counsel, was convicted on January 24, 2006, pursuant to a plea of no contest, of the offense of possession of a firearm or destructive device by a felon, a fourth-degree felony.  On February 1, 2006,  the state court entered a Second Amended Judgment, Order and Commitment to the Corrections Department.  He was sentenced to a term of eighteen months (18) months, followed by one (1) year parole to be served concurrently with his other sentences. [Doc. 11-1 at Ex. C and Ex. D.]

33.   On July 14, 2006, O'Kelley, now represented by the Public Defender Department of the State of New Mexico, filed a Memorandum in Opposition to the Proposed Summary

Affirmance. [Doc. 11-1 at Ex. L.] He raised four issues on appeal.

A.      "The State Failed to Provide Substantial Evidence That When He Restrained Jose Campos Against His Will by Intimidation– Threatening Death or Great Bodily Harm by Holding a Gun on Jose– Jimmy Ray [O'Kelley] Did So with the Further Intent of Physically Injuring Jose." [*Id.* at p. 5.]

B.      "If There Had Been Sufficient Evidence of First Degree Kidnapping, Conviction of Both Aggravated Assault (Deadly Weapon) and Kidnapping Offends State and Federal Constitutional Guarantees Against Double Jeopardy, When the Conduct Giving Rise to Both Convictions Was Unitary and There Is No Clear Evidence That the Legislature Intended to Impose Multiple Punishments for That Conduct." [*Id.* at p. 12.]

C.      "Principles of Fundamental Fairness Militate That Jimmy Ray Receive Full Credit for the Almost Four-Year Period of Presentence Confinement, When the Lengthy Delay Was Due to the Prosecution's Deliberate and Dilatory Overcharging That Prevented Jimmy Ray [O'Kelley] from Receiving the Full Benefit of the Court's Concurrent Sentencing." [*Id.* at p. 15.]

D.      "Jimmy Ray's [O'Kelley's] Fundamental Right to Due Process Was Violated by His Conviction for the Aggravated Assault of Jose Campos, When the Indictment Charged Him with the Aggravated Assault of Hellamon Telles." [*Id.* at p. 16.]

34.  On September 18, 2006, the New Mexico Court of Appeals filed a Memorandum Opinion which addressed the sufficiency of the evidence, double jeopardy, presentence confinement credit, the indictment error and the ineffective assistance of counsel claim in connection with the variance between the indictment and the evidence.  A three judge panel of the Court of Appeals affirmed the district court's judgment and sentence. [Doc. 11-2 at Ex. M.]

35.  On October 10, 2006, O'Kelley, represented by the New Mexico Public Defender, filed a Petition for Writ of Certiorari to the New Mexico Supreme Court. [Doc. 11-2 at Ex. N.]

36.  On November 13, 2006, the Supreme Court of New Mexico issued an Order granting

11

the Petition for Writ of Certiorari and also filed the Writ of Certiorari.  [Doc. 11-2 at Ex. O and Ex. P.]

37.  On February 15, 2008, O'Kelley, represented by the New Mexico public defender, filed a Brief in Chief on Writ of Certiorari.  [Doc. 11-3 at Ex. V.]

38.  On May 22, 2008, Respondent New Mexico Attorney General filed its Answer Brief on Certiorari. [Doc. 11-3 at Ex. R.]

39.  On October 1, 2008, having considered the petition and briefs by the parties, the Supreme Court ordered that the writ be quashed as improvidently granted and remanded to the Court of Appeals.  [Doc. 11-4 at Ex. S and Ex. T.]

40.  On October 23, 2008, the New Mexico Court of Appeals remanded to the state district court, the conviction being now final. [Doc. 11-4 at Ex. U.]

41.  On May 12, 2009, O'Kelley filed a Petition for Writ of Habeas Corpus in the state district court. [Doc. 11-4 at Ex. V.]

42.  On January 13, 2010, the state court entered an order dismissing O'Kelley's Writ of Habeas Corpus. [Doc. 11-4 at Ex. W.]

43.  On February 1, 2010, the Chief Clerk of the Supreme Court of New Mexico granted a motion for extension of time to file Petition for Writ of Certiorari to the District Court until March 12, 2010.  [Doc. 11-4 at Ex. Y.]

44. On March 10, 2010, the Deputy Clerk of the Supreme Court of New Mexico returned O'Kelley's Petition for Writ of Certiorari as unacceptable because it was filed late.  The Deputy

Clerk of the Supreme Court stated that O'Kelley's Writ of Certiorari was received March 10, 2010, and should have been filed on or before February 13, 2010.  [Doc. 11-4 at Ex. X.]

45.  On March 18, 2010, the New Mexico Supreme Court, on its own motion, stated that a motion for extension of time to file petition for writ of certiorari was filed in this matter on February 1, 2010, and an extension was granted until March 12, 2010, and there being no further entry on the docket, the matter was dismissed for failure to perfect the appeal. [Doc. 11-4 at Ex. Z.]

46.  On or about March 15, 2010, O'Kelley filed a "Motion to Re-Present Writ of Certiorari." [Doc. 11-4 at Ex. Z-1.]

47.  On March 22, 2010, the New Mexico Supreme Court, by its own motion to withdraw the order of dismissal issued on March 18, 2010, granted the motion to dismiss the order and granted O'Kelley's motion to accept the petition for writ of certiorari filed March 22, 2010. [Doc. 11-4 at Ex. AA.]

48.  On March 22, 2010, O'Kelley filed his Motion for Writ of Certiorari to the Third Judicial District Court with the New Mexico Supreme Court.  [Doc. 11-4 at Ex. BB.]

49.  On April 6, 2010, the New Mexico Supreme Court denied O'Kelley's Petition for Writ of Certiorari. [Doc. 11-4 at Ex. CC.]

## Analysis

## Exhaustion of Remedies

50.  Before reaching the merits of O'Kelley's habeas claims, the Court must first

13

determine if O'Kelley exhausted his claims in state court. A federal court may consider a

petition for writ of habeas corpus only after the petitioner first presents his claims to a state court

and exhausts his state remedies, unless "there is an absence of available State corrective

process," or "circumstances exist that render such process ineffective to protect the rights of the

applicant."  28 U.S.C. § 2254(b)(1).  "The exhaustion requirement is satisfied if the issues raised

in the federal petition have been properly presented to the highest state court, either by direct

review of the conviction, or in a  post-conviction attack."  *Dever v. Kansas State Penitentiary*, 36

F.3d 1531, 1534 (10th Cir. 1994).

     51.  In this case, O'Kelley raised the claims contained in Ground One and Ground Two

of his federal habeas petition on direct appeal and also in his state habeas petition.  He raised the

claims in Ground Two, Three, Four, Five, Six and Seven only in his state habeas petition. All

claims were appealed to, and denied by, the New Mexico Supreme Court, some on procedural

grounds.

     52.  O'Kelley raises the "claim" in Ground Eight for the first time in this federal petition.

However, O'Kelley's "claim" in Ground Eight is not actually a claim but rather a catch-all

assertion where in he argues that the state district court's dismissal of his claims in the petition

for writ of habeas corpus was based on "an unreasonable determination of the facts." [Doc. 1 at

pp. 18-19.] The undersigned Magistrate Judge determines that O'Kelley's "claim" in Ground

Eight is not a separate and distinct claim for relief but rather a general argument that the state

courts did not properly resolve the claims O'Kelley presented to them.   Because this Court

addresses all of O'Kelley's claims herein, and the "claim" in Ground Eight is but a reiteration of his other claims, the Court will recommend that O'Kelley's Ground Eight be dismissed with prejudice.

53.   The Court will address each of O'Kelley's claims individually (Grounds One through Ground Seven) below because the determination of exhaustion is not consistently straight forward in all of O'Kelley's claims.  For example, some of his claims are in fact exhausted, some claims were defaulted in state court, and some claims are procedurally barred.

### Deference to State Court Adjudications

54.   O'Kelley's petition is analyzed under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.  The appropriate standard of review depends on "whether a claim was decided on the merits in state court."  *McLuckie v. Abbott*, 337 F.3d 1193, 1197 (10th Cir. 2003); *Allen v. Mullin*, 368 F.3d 1220, 1234 (10th Cir. 2004)(*citing Bell v. Cone*, 535 U.S. 685, 694 (2002), *cert. denied,* 543 U.S. 1156 (2005)).  If the claim was adjudicated on the merits by the state court, the petitioner will be entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

55.   With regard to whether a state court adjudicated a petitioner's claims "on the merits," the United States Supreme Court recently held and reconfirmed "that § 2254(d) does not

require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter,* 131 S.Ct. 770, 785, 2011 WL 148587, *10 (Jan. 19, 2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-785. Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. *Id.* "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (*citing Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). The undersigned Magistrate Judge finds that O'Kelley's claims were adjudicated on the merits, unless otherwise addressed in the discussion of a particular claim.

56. "When reviewing a state court's application of federal law, we are precluded from issuing the writ simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." *McLuckie*, 337 F.3d at 1197. "Rather, we must be convinced that the application [of the federal law] was also objectively unreasonable." *Id.* This means that a federal court is precluded from granting habeas relief, except in the narrow circumstances described in § 2254(d), and that this Court must apply a presumption that the factual findings of the state court are correct unless the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)(this deferential standard of review requires that state court convictions be given "the

benefit of the doubt"); *Smallwood v. Gibson*, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied,* 531 U.S. 833 (2000).

57.   To justify federal habeas relief, the decision of the state court must not only have been erroneous, but also unreasonable.  *William v. Taylor*, 529 U.S. 362, 365 (2000); *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004), *cert. denied*, 546 U.S. 1030 (2005).  "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials.  Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."  *Thompson v. Oklahoma*, 202 F.3d 283 (Table, Text in Westlaw), No. 98-7158, 2000 WL 14404 at *6 (10th Cir. Jan. 10, 2000)(unpublished), *cert. denied,* 530 U.S. 1265 (2000).

### O'Kelley's Federal Habeas Claims

**A.  Ground One**

58.   O'Kelley argues that he was denied due process when he was convicted for aggravated assault because his indictment named a different victim, Telles, than the victim he was convicted for assaulting, Campos.  He claims that his due process rights were violated when the jury was not read the indictment and his counsel was ineffective for failing to detect the victim's name discrepancy in the indictment prior to trial.[5]

59.     The question raised by O'Kelley's "due process claim" in Ground One is whether

---

[5]Because he raises the issue of ineffective assistance of counsel in many of his stated grounds in his federal petition, the Court will address all of O'Kelley's ineffective assistance of counsel claims below at one time, after outlining the applicable legal standard. [Doc. 1 at pp. 5-6.]

any of the trial court's actions or decisions so infused the trial with unfairness as to deny

O'Kelley due process of law.   *See Lisenba v. People of State of California*, 314 U.S. 219, 238

(1941), *reh'g denied*, 315 U.S. 826 (1942). Whether there was a denial of a fair trial must be

judged on a totality of the facts.   *Gay v. Graham*, 269 F.2d 482, 487 (10th Cir. 1959)(internal

citation omitted).

60.  The New Mexico Court of Appeals held that there was no indication "that the charge

in the present case was so deficient that it prejudiced Defendant's ability to prepare a defense,

and Defendant [did] not establish any prejudice." [Doc. 11-2 at Ex. M at pp. 8-9.]

> The record reveals that the deficiency went unnoticed by both the State and the
> defense throughout trial and that the defense understood that Defendant was
> charged with aggravated assault on Jose Campos, not Hellamon Telles.
> Defendant does not argue that, due to the named victim in the indictment, he was
> unprepared to defend against the charge.  The record indicates that the same
> incident and the same general actions against the same person form the basis for
> the two charges for which he was tried in this case- kidnapping and aggravated
> assault.  Further, the jury was not read the indictment and was instructed on
> aggravated assault, naming Jose Campos as the victim.  For these reasons, we
> hold that Defendant has not established that he lacked sufficient notice to
> adequately defend against the charges or that the jury was confused by the
> indictment and the evidence. Therefore, we are not persuaded that Defendant was
> denied due process. (Internal citations omitted.)

 [*Id*.]

61.  Pursuant to the deferential standard under which this Court must analyze state habeas

claims, and pursuant to 28 U.S.C. 2254 (e)(1), these findings by the state court are subject to the

presumption of correctness.  *See Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

O'Kelley has not rebutted this presumption; he simply asserts the same arguments which he

presented to the state court.

62.   Based on all the circumstances, including its review of the trial transcript, as well as the standards of review by which this Court is governed, the undersigned Magistrate Judge concludes that O'Kelley was not denied due process of law and will recommend that Ground One be dismissed with prejudice.

**B.  <u>Ground Two.</u>**

63.   O'Kelley alleges there was insufficient evidence for the jury verdict finding him guilty of kidnapping Campos because the alleged restraint of Campos was "fleeting and incidental." [Doc. 1 at pp. 7-8.]  O'Kelley argues that testimony at trial failed to establish that his alleged actions met the elements of a first-degree kidnapping case which requires proof of the following elements beyond a reasonable doubt: (1) the defendant restrained or confined the victim by force or intimidation; and (2) the defendant intended to hold the victim against his will to inflict death or physical injury.  *See* NMSA § 30-4-1 (2003). [Doc. 1 at pp. 7-8.]   He argues that he was therefore denied due process. [*Id.*]

64.   The New Mexico Court of Appeals held that the facts presented to the jury were sufficient to support a conviction of kidnapping under New Mexico law.

> The State presented evidence that Defendant pointed a gun at Mr. Campos to restrain him while others were beating him. . . . Regardless of how Defendant characterizes the restraint, however, evidence that Defendant restrained Mr. Campos at gunpoint with the intent that Mr. Campos suffer physical injury or death is sufficient proof of first degree kidnapping.

[Doc. 11-2 at p. 3.]

65.   Based on the deference mandated by § 2254(d), as well as its own review of the trial transcript, this Court must apply a presumption that the factual findings of the state court are correct.  O'Kelley has failed to rebut this presumption by any evidence, must less the required "clear and convincing evidence."

66.   Therefore, the undersigned Magistrate Judge finds sufficient evidence to support the kidnapping conviction and there is no due process violation.  Thus, the Court will recommend that Ground Two be dismissed with prejudice.

**C.  <u>Ground Three</u>.**

67.   O'Kelley claims that, after considering a lengthy objection by O'Kelley's trial counsel, the state court improperly allowed hearsay testimony from a Texas detective.  O'Kelley alleges that the detective, based on the detective's conversation with a patrolman, testified about what O'Kelley had told the patrolman earlier in the evening.  [Doc. 1 at pp. 8-9; *see also* TT Vol. 2, testimony of Detective Ruiz at pp. 301-322.]

68.   O'Kelley did not directly appeal this issue.[6]  He did, however, raise this claim in his petition for habeas corpus filed with the state court which was ultimately denied by the New Mexico Supreme Court. [Doc. 1 at pp. 8-9.]

69.   In ruling on O'Kelley's habeas petition, the state court held that evidentiary objections such as this one can only be raised on direct appeal and are not properly raised in a

---

[6] O'Kelley states that, contrary to his wishes, his appellate counsel did not appeal this issue.  This ineffective assistance of counsel aspect of this issue will be discussed *infra* with the other ineffective assistance of counsel claims.

post-conviction proceeding.  *Id*., (*citing State v. Sisneros*, 79 N.M. 600, 445 P.2d 875 (1968)).

The state court also held, in the alternative, that O'Kelley's statement to the patrolman was an

admission by a party opponent and was therefore not hearsay, *citing* Rule 11-801(D)(2) NMRA.

[Doc. 11-4, Ex. W.] It denied O'Kelley's claim.

70.  Now, in his federal habeas petition, O'Kelley asserts that when the state court

allowed the detective to testify about what O'Kelley had told the patrolman, he was denied the

right under the Sixth Amendment to confront a witness, presumably the patrolman.

71.   Under the circumstances of this case, habeas relief is precluded due to a state court's

application of a procedural bar.  Here, the state court explicitly invoked a state procedural bar

rule as  grounds for its decision. [Doc. 11-4, Ex. W.]

72.   "[I]f a petitioner failed 'to exhaust state remedies and the court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement

would now find the claim procedurally barred,' the claims are considered exhausted and

procedurally defaulted for purpose of federal habeas relief."  *Thomas v. Gibson*, 218 F.3d 1213,

1221 (10th Cir. 2000)(*quoting Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

73.   On habeas review, federal courts do not address issues that have been "defaulted in

state court on adequate and independent state procedural grounds. . . , unless the petitioner can

demonstrate cause and prejudice or a fundamental miscarriage of justice."  *Smith v. Workman*,

550 F.3d 1258, 1274 (10th Cir. 2008); *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)

(*citing Coleman v. Thompson* 501 U.S. 722, 749-50 (1991)) and *Steel v. Young*, 11 F.3d 1518,

1521 (10th Cir. 1993). A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. *English*, 146 F.3d at 1259, *citing Klein v. Neal*, 45 F.3d 1395, 1398-99 (10th Cir. 1995). A state procedural ground is adequate, as a general rule, when the state rule of procedural default is applied evenhandedly in the vast majority of cases. *Id.* (citing *Maes v. Thomas*, 46 F.3d 979, 985-86 (10th Cir. 1995)); *see also Church v. Sullivan*, 942 F.2d 1501, 1506 (10th Cir. 1991)(*relying upon Harris v. Reed*, 489 U.S. 255 (1989)); *Johnson v. Mississippi,* 486 U.S. 578, 587 (1988).

74. The Tenth Circuit has previously held that New Mexico's procedural bar at issue here is an independent and adequate state procedural ground. *Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998)("Our review of New Mexico cases indicates that New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief.") *See also Scott v. Romero*, 153 Fed. Appx. 495, 497 (10th Cir. Nov. 2, 2005), *cert. denied* , 547 U.S. 1077 (2006).

75. Thus, O'Kelley procedurally defaulted on this issue by failing to directly appeal it after the trial and verdict.

76. Even if this were not the case, and the Court was to consider O'Kelley's evidentiary claim in Ground Three, the claim still fails because he has not met his burden of showing prejudice. In order to succeed on a claim of a constitutional violation based on the state trial court's evidentiary rulings, a petitioner has to show that the rulings were "so prejudicial in the context of the proceedings as a whole that he was deprived of the fundamental fairness essential

22

to the concept of due process." *Nichols v. Sullivan*, 867 F.2d 1250, 1253 (10th Cir. 1989).

77.   O'Kelley makes only conclusory allegations that evidentiary ruling deprived him of a fair trial; he merely states that the "detective's trial testimony was devastating to the defense." [Doc. 1 at p. 8.]   This bare allegation falls far short of showing "prejudice of constitutional dimension," *Chaney v. McCotter*, 5 F.3d 545 (Table, Text in Westlaw), 1993 WL 345526, at * 3 (10th Cir. Aug. 27, 1993), or that it "so infused the trial with unfairness as to deny due process of law." *Estelle v. McGuire*, 502 U.S. 62, 75 (1991), *quoting Lisenba v. California*, 314 U.S. 219, 228 (1941).

78.   Based on the adequate and independent state procedural bar, as well as the Court's own review of the trial transcript and the Court's conclusion that the trial court's rulings were not so prejudicial in the context of the proceedings as a whole that O'Kelley was deprived of the fundamental fairness essential to due process, the undersigned Magistrate Judge will recommend that his claims in Count Three be dismissed with prejudice.

**D.  Ground Four**.

79.   O'Kelley argues that the trial testimony which identified him as the individual who held a gun to Campos's head violated his due process rights. [Doc. 1 at pp. 10-11.] He also argues that his trial counsel was ineffective in defending him in connection with these various identifications at trial.[7] [*Id.*]

---

[7]O'Kelley's claim of ineffective assistance of counsel at trial in connection with Ground Four will be discussed *infra* with the other ineffective assistance of counsel claims.

80.   O'Kelley did not directly appeal his due process claim or his ineffective assistance of counsel claim because, contrary to his wishes, his trial counsel did not include these issues in his docketing statement.[8]  [Doc. 1 at pp. 9-11.]

81.  In ruling on O'Kelley's habeas petition, the state court held that O'Kelley is "precluded from arguing that he was not the person who committed the crimes because on his appeal, he admitted that he pointed a gun at the victim and restrained the victim." [Doc. 11-4 at Ex. W at p. 3 of 4.] The state court concluded that O'Kelley thus "did not make the necessary showing of resulting prejudice from counsel's alleged failures." [*Id.*] It denied O'Kelley's petition.

82.  If the State, as occurred here, does not raise the issue of procedural default, the Court can raise it *sua sponte.   Hardiman v. Reynolds,* 971 F.2d 500, 505 (10th Cir.1992).

83.  The issues involved in O'Kelley's Ground Four claim all involve evidentiary issues regarding the identification of O'Kelley as the individual who held the gun to Campos's head and as well as "brandishing" the gun toward the apartment complex and around the yard.  As discussed above in Ground Three, evidentiary issues and objections such as these can only be raised on direct appeal and are not properly raised in a post-conviction proceeding.  *See* ¶¶ 68-75, above.

84.  Because O'Kelley did not directly appeal the evidentiary issues raised in Ground

---

[8]O'Kelley's claim of ineffective assistance of counsel for failing to appeal his asserted claims in Ground Four will be discussed *infra* with the other ineffective assistance of counsel claims.

24

Four, the undersigned Magistrate Judge will recommend that O'Kelley's claims be considered

procedurally defaulted for purpose of federal habeas relief.  *See Thomas v. Gibson*, 218 F.3d

1213, 1221 (10th Cir. 2000).  In *Thomas* the Court noted that because the petitioner never

presented a particular question of his trial counsel's performance to the Oklahoma Criminal

Court of Appeals, that claim was technically unexhausted.

> Nevertheless, the Supreme Court has held that if a petitioner "failed to exhaust
> state remedies and the court to which the petitioner would be required to present
> his claims in order to meet the exhaustion requirement would now find the claims
> procedurally barred" the claims are considered exhausted and procedurally
> defaulted for purposes of federal habeas relief.

*Id.,* (*quoting Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)).

85.  Even if O'Kelley's claims were not procedurally barred, his claims in Ground Four

should still be dismissed because he has failed to meet his burden of showing prejudice.

O'Kelley makes only conclusory allegations regarding the allegedly insufficient trial testimony

identifying him as the individual who pointed the gun at Campos.  A bare allegation falls far

short of showing "prejudice of constitutional dimension" *Chaney v. McCotter*, 5 F.3d 545

(Table, text in Westlaw), 1993 WL 345526, at * 3 (10th Cir. Aug. 27, 1993), or that it "so infused

the trial with unfairness as to deny due process of law." *Estelle v. McGuire*, 502 U.S. 62, 75

(1991), *quoting Lisenba v. California*  , 314 U.S. 219, 228 (1941).

86.  Based on the adequate and independent state procedural bar, as well the Court's own

review of the trial transcript and the Court's conclusion that the trial evidence was not so

prejudicial in the context of the proceedings as a whole that O'Kelley was deprived of the

fundamental fairness essential to due process, the undersigned Magistrate Judge will recommend that O'Kelley's claims in Count Four be dismissed with prejudice.

**E.  Ground Five** - ineffective assistance of counsel, discussed below.

**F.  Ground Six.**

87.    O'Kelley alleges prosecutorial misconduct based on an alleged "misstating of facts and evidence." [Doc. 1 at p. 14.]  First, O'Kelley claims that when he testified at trial, the prosecutor deliberately elicited testimony from him about prior convictions, including testimony about a conviction which occurred two years after the instant charges.  Second, O'Kelley claims that the prosecutor initially misled the jury stating the "spot" on the gun was blood, and not rust. Then, in his closing argument the prosecutor told the jurors that O'Kelley was shot and that his blood was on everything and that the jury should use their own common sense.  The prosecutor also stated that Telles was intimidated and afraid to identify O'Kelley at trial, when in reality Telles testified that the police repeatedly suggested O'Kelley during their investigation of the shooting.  Finally, O'Kelley asserts there was a cumulative effect of prosecutorial misconduct. O'Kelley states that, contrary to his wishes, his appellate counsel did not appeal these issues of prosecutorial misconduct.

88.    O'Kelley did not directly appeal his prosecutorial misconduct claims or ineffective assistance of counsel claims because, contrary to his wishes, his trial counsel did not include

these issues in his docketing statement. [9]   He included these claims in his state petition for writ of habeas corpus which was denied.  He appealed the denial of his habeas petition to the New Mexico Supreme Court [Doc. 1 at pp. 15-16] and his appeal was denied [Doc. 11-4, Ex. CC].

89.   In dismissing O'Kelley's petition for writ of habeas corpus, the state district court held that O'Kelley's claim of prosecutorial misconduct based on O'Kelley's trial testimony about his prior convictions was an evidentiary objection that should have been  raised on direct appeal and could not properly be raised in a post-conviction proceeding, citing *State v. Sisneros*, 79 N.M. 600, 446 P.2d 875 (1968). [Doc. 11-4, Ex. W at p.2.]  Thus, this claim in Ground Six is procedurally defaulted "unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice."  *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir.2008); *see discussion supra* under Section C, Ground Three.  Here, O'Kelley's bare allegations that his own testimony regarding his prior convictions deprived him of a fair trial falls short of meeting his burden of showing prejudice.

90.   With regard to the prosecutor's statements in closing, the state court stated that "the closing arguments recited at [O'Kelley's] trial were made on the record [and as such] may not be reviewed in a post-conviction proceeding" citing *State v. Martinez*, 85 N.M. 293, 511 P.2d 779 (N.M. Ct.App. 1973.) [Doc. 11-4, Ex.W at p.2.]  Thus, this claim is procedurally defaulted as well.  In addition, even if the claim was not procedurally defaulted, this Court finds that

---

[9]O'Kelley's claim of ineffective assistance of counsel for failing to appeal his asserted claims in Ground Six will be discussed *infra* with the other ineffective assistance of counsel claims.

O'Kelley has not demonstrated cause and prejudice or a fundamental miscarriage of justice. All that O'Kelley offers by way of evidence to show prejudice are conclusory allegations that the state's closing arguments deprived him of a fair trial.  Again, this falls far short of his burden of showing prejudice.

91.  With regard to the remaining evidentiary issues raised in Ground Six, these issues can only be raised on direct appeal and are not properly raised in a post-conviction proceedings. [*See* discussion under Ground Three, above.] Therefore, these evidentiary claims must be considered procedurally defaulted for purposes of federal habeas relief.  Moreover, once again, O'Kelley has not demonstrated cause and prejudice or a fundamental miscarriage of justice.

92.  Finally, the Court takes note of the fact that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."  *Douglas v. Workman*, 560 F.3d 1156, 1177 (10th Cir. 2009)(*citing United States v. Young*, 470 U.S. 1, 11 (1985)).  Habeas relief is appropriate only when a prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.*, (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Here, O'Kelley did not demonstrate that the prosecutor's statements so affected the trial. Moreover, if a prosecutor's remarks are undesirable or "even universally condemned," that, without more, is insufficient to demonstrate prosecutorial misconduct.  *Darden v. Wainwright*, 477 U.S. 168, 181, *reh'g denied*, 478 U.S. 1036 (1986).

93.  Based on the adequate and independent state procedural bar, as well as the Court's

own review of the trial transcript and the Court's conclusion that the prosecutor's comments were not so prejudicial in the context of the proceedings as a whole that O'Kelley was deprived of the fundamental fairness essential to due process, the undersigned Magistrate Judge will recommend that O'Kelley's claims in Count Six be dismissed with prejudice.

**F.  Ground Seven**.

94.  Although O'Kelley's claim in Ground Seven is not entirely clear to the Court, it appears that he is arguing that his counsel was ineffective by allowing the introduction of a handgun which had been found in the car that O'Kelley rode in on his way to the El Paso hospital, in spite of a stipulation that this hand gun was not to be referred to at the trial. However, the trial transcript reflects that the parties stipulated that any shell casings, bullets and guns could be admitted by either party without objection.  TT, Vol. 1 at pp. 120-21.  The Court will treat this objection as an ineffective assistance of counsel claim based on O'Kelley's counsel's stipulation permitting the admission of any of the guns and this issue will be discussed below with the other ineffective assistance of counsel claims.

**G.  O'Kelley's Ineffective assistance of counsel claims**.

**Legal Framework for Ineffective Assistance of Counsel Claims**

95.  The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) governs the inquiry of whether an attorney's performance was ineffective.  In order to establish a claim of ineffective assistance of counsel, O'Kelley must show both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment," and that he was so prejudiced because of counsel's errors that the outcome of the state court's proceedings was rendered unreliable. *Id.* In applying the test of whether an attorney's performance was deficient and fell below an objective standard of reasonableness, the Tenth Circuit advises that "we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable profession judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir.)(internal citation omitted), *cert. denied*, 537 U.S. 1093 (2002). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied,* 522 U.S. 844 (1997).

96. The question under *Strickland* is not whether counsel could have done more or even better, but whether counsel's actions or decisions were "[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland*, 466 U.S. at 691. In other words, even if O'Kelley had not received "perfect" or the "best possible" legal representation at every step of the proceeding, he is not entitled to "perfect" or the "best possible" representation. *Washington v. Watkins*, 655 F.2d 1346, 1357 (5th Cir. 1981), *cert. denied,* 456 U.S. 949 (1982)(not "entitled to perfect or error free representation"); *United States v. Rhoads*, 617 F.2d 1313, 1319 (8th Cir. 1980)(not entitled to representation that results in an acquittal or "best possible" representation); *see also Martinez v. U.S.*, 2008 WL 2329171, *5 (D.

30

Utah June 3, 2008)(unpublished opinion).  The Court does not indulge in the "distorting effects of hindsight."  *Strickland,* 466 U.S. at 689.

97.  Claims of ineffective assistance of counsel are not designed to allow defendants to relitigate trial errors that should have been raised on direct appeal.  "State habeas petitioners, in particular, are not allowed to bring their state trial court errors into federal court under the guise of catch-all ineffective assistance of counsel claims."  *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008)(*relying on* 28 U.S.C. § 2254(a) which notes that a federal court entertains a federal habeas petition on behalf of a state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"), *cert. denied,* 129 S.Ct. 1630 (2009).

98.  O'Kelley's ineffective assistance of counsel claims stem from his lawyer's actions at the trial and from his lawyer's alleged failure to appeal various issues.  The Court undertook an exhaustive review of the record proper and exhibits, as well as the trial transcript with respect to the ineffective assistance of counsel claims.  This Court finds that O'Kelley did not demonstrate that his counsels' actions or decisions were "objectively unreasonable in all the circumstances," *Strickland,* 466 U.S. at 691, or "bear no relationship to a possible defense strategy."  *Hoxie*, 108 U.S. at 1246.  The Court lists each claim below and provides further analysis as required.

**O'Kelley's ineffective assistance of counsel claims stemming from trial**.

99.  With respect to O'Kelley's ineffective assistance of counsel claims stemming from trial, the undersigned Magistrate Judge finds that O'Kelley did not demonstrate constitutionally

defective performance by his trial counsel or prejudice resulting from his counsel's errors such that the outcome of the trial was rendered unreliable.

100.   O'Kelley claims ineffective assistance of counsel in Ground One on the basis that, at trial, his counsel did not raise the discrepancy between the charges in the indictment (which charged O'Kelley with assault against Telles) and the charges at trial (which charged O'Kelley with the assault of Campos).  This issue was raised on direct appeal and the Court of Appeals, upheld by the New Mexico Supreme Court, held that "the deficiency went unnoticed by both the State and the defense throughout trial and that the defense understood that Defendant was charged with aggravated assault on Jose Campos, not Hellamon Telles." [Doc. 11-2 at Ex. M at pp. 8-9.] The Court of Appeals also noted that even if defense counsel had noticed the discrepancy between the indictment and the evidence, the state would not have been forced to prosecute the crime against the wrong victim as it could amend the indictment to conform to the evidence. [*Id.* at p. 9.]  The undersigned Magistrate Judge finds that the facts as alleged do not support a claim of ineffective assistance of counsel and will recommend that this ineffective assistance of counsel claim in Ground One be dismissed with prejudice.

101.   O'Kelley claims ineffective assistance of  counsel in Ground Four based on his lawyer's failure, at trial, to contest Lewis's identification of O'Kelley as the man holding the gun to Campos's head. Lewis's identification of O'Kelley occurred at the trial after Lewis previously denied being able to identify the man who had been holding the gun to Campos's head. O'Kelley appealed this claim in his state petition for writ of habeas [Doc. 11-4, Ex. V] and it was

dismissed. [Doc.11-4, Ex. W.] A review of the trial transcript reflects that O'Kelley's counsel cross-examined Lewis and impeached his testimony with previous statements. [TT Vol. 2, testimony of Lewis at pp. 336-346.] Based on a thorough review of the trial transcript, the Court finds that O'Kelley's lawyer's questions to Lewis were objectively reasonable and that O'Kelley did not demonstrate prejudice; therefore the Court will recommend that this claim of ineffective assistance of counsel in Ground Four be dismissed with prejudice.

102.  O'Kelley also challenges his attorney's failure to pursue a "motion to challenge suggestive identification procedures" in Ground Four. [Doc. 1 at p. 10.] O'Kelley appealed this claim in his state petition for writ of habeas [Doc. 11-4, Ex. V] and it was dismissed. [Doc.11-4, Ex. W.] He states that at trial Telles testified that O'Kelley was repeatedly suggested to him as the man holding the gun over Campos during a pre-trial photo line-up. [Doc. 1 at pp. 9-10.] It is not clear in what respect he thinks his trial counsel was ineffective in connection with Telles's testimony. Based on a thorough review of the trial transcript, the Court finds that O'Kelley's counsel challenged the identification procedures, that the cross examination of Telles by O'Kelley's trial counsel was objectively reasonable and that O'Kelley did not demonstrate prejudice; therefore the Court will recommend that this claim of ineffective assistance of counsel in Ground Four be dismissed with prejudice.

103.   In Ground Five, O'Kelley claims that his trial counsel was ineffective for failing to call Natalie Mesa ("Mesa") to testify. O'Kelley appealed this claim in his state petition for writ of habeas [Doc. 11-4, Ex. V] and it was dismissed. [Doc.11-4, Ex. W.] O'Kelley claims that

Mesa would have testified that the man she saw hold a gun to the head of Telles was a tall black man and "he looked like he had braids" and was wearing a "regular white T-shirt." [Doc. 11-4, Ex. V at p. 19.] He claims that this description, given to police within hours of the shooting, would contradict the state's description of the gunman as a "bald headed black man with a muscle shirt." [Doc. 1 at p. 12.] O'Kelley states that his trial counsel told him that he did not call Mesa because the state intended to call her; however she never testified. [Doc. 1 at pp. 12-14.]

104.   "[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008), *cert. denied,* 129 S.Ct. 1630 (2009).  Further, "the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy." *Id*. at 1138 (*citing Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997), *quoting Kimmmelman v. Morrison*, 477 U.S. 365, 381 (1986)). Based on its review of the trial transcript, the Court finds that trial counsel's decisions as to which witnesses to call were objectively reasonable and the Court will not second guess trial counsel's decision not to call a particular witness. Further, O'Kelley has not demonstrated prejudice. Therefore, the Court will recommend that this claim of ineffective assistance of counsel in Ground Five be dismissed with prejudice.

105.   Also in Ground Five, O'Kelley claims that his trial counsel failed to retain an expert witness or investigator to investigate the owner of a vehicle in which the state found unspent bullets matching the casings found at the scene of the party.  O'Kelley appealed this

claim in his state petition for writ of habeas [Doc. 11-4, Ex. V] and it was dismissed. [Doc.11-4, Ex. W.] In reviewing this claim, the Court is mindful that

> counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 691.  Based on its review of the trial transcript, the Court finds that trial counsel's decisions regarding the use of an expert witness or investigator were objectively reasonable and the Court will not second guess trial counsel's decision not to retain an expert witness or investigator.  Again, O'Kelley has not demonstrated prejudice. Therefore, the Court will recommend that this claim of ineffective assistance of counsel in Ground Five be dismissed with prejudice.

106.   Lastly in Ground Five,  O'Kelley asserts that his trial counsel's errors undermined the reliability of the trial**.**  Based on its review of the trial transcript, the Court finds that trial counsel's overall defense of O'Kelley was objectively reasonable and therefore not constitutionally defective.  The Court also finds that O'Kelley has not demonstrated prejudice resulting from the actions taken by his counsel and therefore the outcome of the trial was not rendered unreliable. The Court will recommend that this claim of ineffective assistance of counsel in Ground Five be dismissed with prejudice.

107.   In Ground Seven,  O'Kelley states that his trial counsel stipulated with the State that the 9 mm handgun seized from the vehicle in which O'Kelley was driven to an El Paso

hospital was irrelevant and not to be introduced into evidence.  At trial, two other 9 mm

handguns were introduced into evidence by the prosecution and they were identical in

appearance to the gun seized from a vehicle in El Paso.  O'Kelley claims that his trial counsel

was ineffective for forgetting the stipulation.   [Doc. 1 at pp. 16-17.][10]  In actuality, the trial

transcript reflects that the parties stipulated that any shell casings, bullets and guns could be

admitted by either party without objection. [TT, Vol. 1 at pp. 120-21.]  Based on its review of

the trial transcript, the Court finds that trial counsel's decision to enter into the stipulation

regarding the admission of shell casings, bullets and guns was objectively reasonable and that

O'Kelley has not demonstrated prejudice; therefore, the Court will recommend that this claim of

ineffective assistance of counsel in Ground Seven be dismissed with prejudice.

### Ineffective assistance of counsel claims
### stemming from counsel's failure to appeal various issues.

108.  O'Kelley claims ineffective assistance of counsel stemming from his trial counsel's

failure to directly appeal the issues raised in Ground Three, Ground Four, Ground Five, Ground

Six and Ground Seven.  Although some of these claims may be procedurally barred, any analysis

on that basis is immaterial because the Court can make a recommended disposition on the

merits.  Based on this Court's exhaustive review of the record, exhibits, the trial transcript as

well as relevant legal authority, the Court finds that O'Kelley has not demonstrated a

constitutionally defective performance by his trial counsel and appellate counsel or prejudice

---

[10] O'Kelley did not appeal this ineffective assistance claim in his state habeas petition.

resulting from his counsels' errors in allegedly failing to appeal certain issues.  Therefore,  the Court will recommend that all of O'Kelley's claims of ineffective assistance of counsel based on failure to appeal the claims directly be dismissed with prejudice.

**G.  GROUND 8.**

Discussed above in ¶ 53.

**Recommended Disposition on O'Kelley's Petition for Writ of Habeas Corpus.**

109.  The Court recommends that O'Kelley's § 2254 petition be denied and that this matter be dismissed with prejudice.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE